NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATHLETE'S FOOT MARKETING ASSOCIATES, LLC and ATHLETE'S FOOT BRANDS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FL CONSULTING INC. and FRITZ L'ESPERANCE,<br><br>Defendants. | Civil Action No. 06-3035 (SRC)<br><br>**OPINION** |

**CHESLER, District Judge**

This matter comes before the Court upon Plaintiffs' motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) (docket item # 9). Defendants have not opposed this motion. The Court has considered the papers submitted by Plaintiffs. It rules based on those submissions pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Plaintiffs' motion will be granted.

**I.     BACKGROUND**

This trademark infringement and breach of contract action follows the dissolution of a franchise relationship between the parties. Plaintiffs Athlete's Foot Marketing Associates, LLC ("AFMA") and its wholly-owned subsidiary Athlete's Foot Brands, LLC ("AFB") are engaged in the business of franchising special retail athletic footwear stores. AFB owns various United States trademarks and servicemarks in connection with the operation of the stores, including the

mark THE ATHLETE'S FOOT® and a winged foot design. It also owns a franchise system, or distinctive business format, which includes store layout, signage and decor, making these features uniform among its many franchise locations.

On or about May 14, 2004, AFB and AFMA and Defendant FL Consulting Inc. entered into a franchise Operating Agreement, and Defendant Fritz L'Esperance executed a Shareholder Guaranty. Defendants defaulted on their obligation under the Operating Agreement to submit the Company's net sales for the month of December 2005 and to pay royalties and other fees. Although notified of the default and given a chance to cure their indebtedness, Defendants failed to perform as demanded. As a result, on March 3, 2006 Plaintiffs exercised their right to terminate the Operating Agreement.

Defendants, however, continued to operate their footwear store as THE ATHLETE'S FOOT® and continued to use Plaintiffs' marks, in violation of the Operating Agreement. Specifically, the Operating Agreement required Defendants to discontinue all use of Plaintiffs' marks, franchise system and trade dress immediately upon termination of the Operating Agreement. Moreover, the Operating Agreement also contained a non-compete provision that barred Defendants for a period of one year from operating a store that sells athletic footwear and other related products within a ten mile radius around the premises of the Defendants' store location and a ten mile radius of all other stores operating as Athlete Foot franchises on May 14, 2004.

Attempts between the parties to resolve the dispute and salvage the business relationship were unsuccessful, and according to Plaintiffs' allegations, Defendants continued to violate their post-termination obligations under the Operating Agreement. Thus, on July 5, 2006, Plaintiffs'

initiated the instant legal action asserting claims for trademark and service mark infringement under the Lanham Act, unfair competition, misappropriation of trade secrets and other confidential information, and breach of contract. Despite being served with process, Defendants have failed to enter an appearance in this case. They have also failed to oppose the instant motion to enjoin Defendants from using the Plaintiffs' marks, trade dress and franchise system and from violating the contractual non-compete provision.

## II.   LEGAL ANALYSIS

In deciding a motion for preliminary injunctive relief under Rule 65(a), the Court must consider four factors:

> (1) whether the movant has shown a likelihood of success on the merits;
>
> (2) whether the movant will be irreparably injured by denial of relief;
>
> (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and
>
> (4) whether granting the preliminary relief will be in the public interest.

Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C., 212 F.3d 157, 160 (3d Cir. 2000), cert. denied, 531 U.S. 1071 (2001). In this case, the Court determines that these factors weigh in favor of granting Plaintiffs' motion.

First, Plaintiffs' have demonstrated a likelihood of success on the merits of their Lanham Act claims and their breach of the Operating Agreement's non-competition covenant. With respect to the infringement claims under the Lanham Act, Plaintiffs have shown that they own valid legally protectable marks and that Defendants' use of the marks to identify goods and

3

services after the termination of the franchise relationship is likely to cause confusion regarding the origin of the goods and services. S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 375 (3d Cir. 1992). The Third Circuit has held that "[t]he franchisor has the power to terminate the relationship where the terms of the franchise agreement are violated. Once a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act." Id.

The breach of the one-year non-competition obligation is also likely meritorious. The United States District Court for the District of New Jersey has held that, based on its prediction of how the New Jersey Supreme Court would rule, covenants not to compete in franchise agreements are enforceable under New Jersey law. Jifffy Lube Int'l, Inc. v. Weiss Bros., Inc., 834 F.Supp. 683, 691 (D.N.J. 1993). The Court observed that New Jersey courts afford more deference to restrictive convenants ancillary to the sale of a business than those that accompany employment contracts because the participants have more equal bargaining power than do those in an employer-employee situation. Id. at 690-91. It reasoned that convenants not to compete in franchise agreements are closer to agreements ancillary to the sale of a business. Id. at 691. Moreover, although a choice of law question is not before the Court at this juncture, the Court notes that it would reach the same conclusion analyzing the issue under Pennsylvania law, which is the law that the Operating Agreement's choice of law provision would apply to the contract. See, e.g., Piercing Pagoda, Inc. v. Hoffner, 351 A.2d 207 (Pa. 1976) (holding post-termination convenant not to compete in franchise agreement enforceable under Pennsylvania law). As Defendants have failed to oppose the instant motion, they have not provided the Court with any indication that the noncompetition provision is overly restrictive or excessive.

4

Second, having established a likelihood of confusion as to the use of its marks and trade dress, Plaintiffs have also demonstrated irreparable harm as a result of Defendants' conduct. Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 196-197 (3d Cir. 1990). Defendants' continued unauthorized operation of their store also harms Plaintiffs' ability to establish a store at or near Defendants' current location, threatens authorized franchised stores operating within the geographic non-compete area, and could hurt the viability of Plaintiffs' franchise system.

The third and four factors in the preliminary injunction analysis also weigh in favor of granting Plaintiffs' motion. Having failed to oppose this motion, and even to defend against this lawsuit, Defendants have not demonstrated that they will suffer irreparable harm if the Court issues the preliminary injunction. The public interest supports protection of Plaintiffs' property interests in its trademarks and the enforcement of the contractual franchise agreement between the parties, including the non-compete provision.

Thus, the Court concludes that Plaintiffs are entitled to the preliminary injunction for which they have applied.

## III. CONCLUSION

For the foregoing reasons, this Court grants Plaintiffs' motion for a preliminary injunction. An appropriate form of order will be filed together with this Opinion.

s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: May 2, 2007